## PATRICK HARTAN *vs.* EASTERN RAILROAD COMPANY.

An agreement between railroad corporations operating connecting lines, as to the division of through ticket money, and as to the sale of through tickets enabling passengers by the payment of a single fare to pass without change of cars from a point on the one road to a point on the other, does not make the corporation selling a through ticket liable for an injury sustained by the purchaser upon the road of the other corporation.

The sale for one sum of a railroad ticket, composed of coupons invalid if detached and each bearing the name of the railroad corporation selling it, empowering the purchaser to pass over the connecting roads of different corporations, does not make the selling corporation liable to the purchaser for an injury received upon a connecting road.

TORT to recover damages for a personal hurt received upon the Maine Central Railroad while the plaintiff was travelling from Boston to St. John, New Brunswick, upon a through ticket purchased of the defendant.

At the trial in the Superior Court, before *Wilkinson, J.*, the plaintiff offered to prove the following facts, and they were thereupon admitted by the defendant : That the plaintiff, on the evening of December 18, 1871, purchased of the defendant corporation, at its station in Boston, a ticket for St. John, New Brunswick ; that he took a seat in Boston, in a car belonging to the defendant ; that he continued riding in the same car till it reached Newport, Me., upon the Maine Central Railroad ; that it was there thrown from the track through negligence of those in charge of the train ; that at that time the plaintiff received the hurt for which he brought the action ; that the Eastern Railroad Company, the Maine Central Railroad Company, and the European & North American Railway Company, were distinct corporations, owning and operating by their separate officers, servants and motive power distinct lines of railway — the Eastern, a line from Boston to Portland, the Maine Central, a line from Portland to Bangor

and the European & North American, a line from Bangor to St. John, all forming a connected route from Boston to St. John; that the ticket sold the plaintiff by the defendant was made up of three joint coupons, as follows : " Eastern Railroad. Boston to Portland. Not good if detached. St. John, N. B." " Eastern Railroad. Portland to Bangor. Via Maine Central R. R. Not good if detached. St. John." " Eastern Railroad. Bangor to St. John. Via E. & N. A. R. R."

It was agreed that the Boston & Maine Railroad also sold similar coupon tickets to St. John, entitling the bearer to pass over the Portland, Saco & Portsmouth, Maine Central, and European & North American Railroads, which were connecting lines, and that it became necessary, in order to the proper settlement of the accounts between the connecting roads, that each coupon should show by what corporation it was issued ; that when the car upon which the plaintiff was riding reached Portland, the employees and engine of the Eastern Railroad Company went no further ; that the car was taken in charge by the servants of the Maine Central Railroad Company, was drawn by their motive power, and at the time of the accident was completely in the control of the Maine Central Railroad Company, and out of the control of the Eastern Railroad Company, unless the agents, servants and motive power were held to be the agents, servants and motive power of the Eastern Railroad Company, by reason of the contract between the corporations referred to below.

It was agreed that the plaintiff's hurt did not result from any defect in the car itself, and there was evidence tending to prove that he was in the exercise of due care when the accident happened.

A contract between the Maine Central Railroad Company of the first part, and the Eastern, and the Portland, Saco & Portsmouth Companies of the second part, which was in force at the time, and according to which the respective companies were operating their roads, was put in evidence. The contract provided " That whereas the respective parties hereto own, operate and control the parts of a continuous line of railroad extending from the city

of Boston to the city of Bangor, with sundry railroads and branches connected therewith, now therefore, for the purpose of insuring greater convenience to the public in the dispatch of business upon said railroads and branches, and greater harmony, efficiency and economy in operating the same, the above-named parties have entered into the following agreement " :

Article 1 provided that the business to be carried on was to be the transportation of persons and property between Boston and Bangor, coming upon the roads of either party and destined to points on the roads of the other party. Article 2 provided that each party should furnish its just proportion of cars, and keep them in repair. The risk of transportation of persons and property and injuries to cars or employees to " rest upon said parties respectively, while on their road." Baggage masters and other employees running over portions of the roads of both parties were to be paid by them in proportion to the distance run upon their respective roads. Article 3 provided among other things that the party of the second part should receive for the transportation of each passenger from Boston to Portland $1.50, and a like proportion a mile for all intermediate points. Article 4 provided among other things that each party at stations on its road should furnish and sell joint tickets to passengers. Article 5 provided for charges for freight cars. Article 6 provided that through rates for passengers and freights might be increased or diminished, the respective shares of the parties being proportionately increased or diminished. Article 7 provided for the running of certain trains at stipulated times. Articles 8 and 9 were for the regulation of the freight business. Article 10 provided for the submission of disputes to arbitration. Article 11. " It being the intention of the parties hereto to establish an efficient, economical and responsible through line for the public accommodation between the points above mentioned," they agreed to do " all things necessary and proper, having due regard to the public interests and convenience, to develop, build up and protect the business of said line."

It was agreed that prior to the accident the plaintiff was not informed and had no knowledge of this contract, nor of a change

in the motive power, servants and agents employed upon the car as stated above.

Upon these facts the court ruled as matter of law that the plaintiff was not entitled to maintain his action, and directed a verdict for the defendant, which the jury returned, and the plaintiff alleged exceptions.

*J. L. Eldridge,* for the plaintiff.

*S. Lincoln, Jr.,* for the defendant.

WELLS, J. Arrangements between connecting roads, forming a continuous line, by which passengers are enabled to procure " through tickets " at the point of starting, and to proceed to their destination, beyond the line of the first road, without changing cars, are required for the accommodation of the public, as well as the convenience of the roads themselves. Such arrangements do not imply joint interests or joint responsibility.

The written contract, in this case, between the Maine Central Railroad and the Eastern and the Portland, Saco & Portsmouth Railroads, merely provides for the mode of conducting business which thus extends over the roads of both parties. It is an agreement for coöperation in service, and distribution of receipts, specifically, by allowing to the party of the second part certain rates of charges, as defined and fixed thereby, according to the amount of service rendered. No community of interest, of obligation or of responsibility results from that agreement.

The plaintiff, then, in order to recover against the Eastern Railroad, must base his claim upon some obligation of contract arising from the purchase of his tickets. Those tickets, although connected, indicated upon their face a separate service by three different roads. They were limited, it is true, so as not to be used separately upon local trains. But that is in accordance with the purpose for which they were purchased. All bore the name of the Eastern Railroad. That was necessary to indicate their source, and to enable proper settlements to be made between the several connecting roads. The purchase was made for a gross sum. But that sum was made up of specific amounts for each ticket, and the purchaser had no interest in or occasion to know the mode of apportionment. That it was made up of three parts was indicated by his tickets.

The obvious import of such a transaction is that the tickets, for passage upon roads beyond its own line, are sold by the first road as agent for the others. The obligations and responsibilities of a carrier of persons, over other roads than its own, are not thereby assumed, unless its relation to those roads, by contract or otherwise, is such as to confer, or at least to consist with, that character.

The case differs from that of *Hill Manufacturing Co.* v. *Boston & Lowell Railroad Co.* 104 Mass. 122, in the evidence both of the contract between the parties, and of the joint relations between the connecting roads. And besides, a carrier of persons stands in somewhat different relations to the subject of the service from those of a carrier of goods. *Exceptions overruled.*