C. & A. R. R. Co. v. Mulford.

## Chicago & Alton Railroad Co. v. Edward A. Mulford et al.

1. RAILROADS—*Sale of Coupon Tickets—Nature of the Contract.*—The sale of a ticket by a railroad company, for transportation of a passenger over its line of road, with a coupon attached for his transportation also upon the connecting road of another company, is a contract by which the company selling the ticket undertakes that the coupon will be recognized by the connecting company as good for the transportation designated upon it.

2. SAME—*Sale of Coupon Tickets upon Roads Afterward Placed in the Hands of a Receiver.*—Where a railroad company sells a ticket for transportation over its own road, and with a coupon attached for transportation also over the line of a connecting road, the fact that such connecting road is afterward taken possession of by the United States Court through its receiver, who is ordered not to honor such coupons, does not relieve the company selling the coupon of its undertaking that the same will be recognized by the connecting road.

3. SAME—*Refusal to Recognize Coupon Ticket—Who Liable for Damages.*—A railroad company selling tickets with coupons attached for transportation over the lines of connecting roads, is liable for damages occasioned by a refusal of such connecting roads to recognize the coupons.

4. STATUTE TO PREVENT FRAUDS UPON TRAVELERS, ETC.—*When it Does Not Apply.*—The act to prevent frauds upon travelers and owners of conveyances for the transportation of passengers (Hurd's Statutes 1891, p. 1094, Sec. 112), has no application to the facts in this case.

Assumpsit.—Breach of contract. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed July 5, 1895.

### STATEMENT OF THE CASE.

Appellees have been engaged in the business of railroad ticket brokers since about the year 1874, and in the year 1880 were in partnership and had offices in Chicago, St. Paul, Minneapolis, St. Louis, Jacksonville, Florida, Indianapolis and perhaps New York.

In 1880 Mr. Mulford, of appellees, had charge of the Chicago office, and Mr. McKenzie resided in St. Louis and had charge of the St. Louis office. Mr. Mulford went to Indian-

apolis in September or October, 1880, for the purpose of establishing a ticket office there, and remained there, as he says, about four weeks. At that time there was in existence a rate war, and tickets were selling from Kansas City, Missouri, to different points on the Lake Erie and Western Railroad for the nominal sum of one dollar. It was anticipated that the rate war would soon end, and that the ordinary tariff rates would be restored, and the Chicago & Alton Railroad Company desired, in that event, to be able to compete successfully with the Wabash, St. Louis and Pacific Railway Company, and, as a means to this end, it decided to place, if possible, large blocks of tickets on the market prior to the anticipated advance of rates. In pursuance of this plan Mr. Oates, the general traveling agent of appellant, called on Mr. Mulford in Indianapolis, and informed Mulford that the defendant was desirous of placing a large quantity of its tickets from Kansas City to the East, and, to induce appellees to purchase, said that appellant would give appellees rates through to Toledo and Sandusky so low that they could make a through rate to New York or Boston that would be less than the regular through rates to those cities. By Mulford's request Oates gave him rates from Kansas City to all points on the Lake Erie and Western Railroad, and to points beyond, when Mr. Mulford told him he would have to confer with his partner, Mr. McKenzie, on the subject, and that he, Oates, had better make an appointment with Mr. McKenzie to see and confer with Mr. James Charlton, appellant's general passenger and ticket agent, in relation to the matter.

Mulford, after the interview with Oates, communicated with Mr. McKenzie, his partner, who was then in St. Louis, and December 10, 1880, Mulford telegraphed from Indianapolis to James Charlton, appellant's general passenger and ticket agent: "We have the am't. Wire Knight to make terms with McKenzie." Knight was the defendant's ticket agent at St. Louis. Thereafter the negotiations were between the plaintiff, McKenzie, and James Charlton.

After several communications, some by letter and some

by telegraph, between McKenzie and Charlton, which will be referred to hereafter, McKenzie, in response to a telegram of date December 13, 1880, sent to him to St. Louis, by Mr. Charlton, came to Chicago, and on the morning of December 14, 1880, met Mr. Charlton in the latter's office. The result of the interview was that Mr. Charlton agreed to sell, and Mr. McKenzie, for himself and his partner, agreed to purchase unlimited tickets from Kansas City over the Chicago and Alton and Lake Erie and Western railroads to different points on the latter road, and some over both those roads, and the Ohio Central railroad to Toledo, for the aggregate sum of $24,957.50.

The tickets, termini, rates agreed on and the number of each kind of tickets, are shown by the following memorandum :

| Kansas City to | Lafayette, | 500 | at | $7.50 | $3,750.00 |
|---|---|---|---|---|---|
| do. | Muncie, | 150 | " | 8.50 | 1,275.00 |
| do. | Lima, | 200 | " | 10.00 | 2,000.00 |
| do. | Fostoria, | 100 | " | 10.50 | 1,050.00 |
| do. | Hoopeston, | 50 | " | 7.40 | 370.00 |
| do. | Paxton, | 50 | " | 7.00 | 350.00 |
| do. | Tipton, | 50 | " | 8.25 | 412.50 |
| do. | Fremont | 700 | " | 11.00 | 7,700.00 |
| do. | Sandusky, | 200 | " | 11.50 | 2,300.00 |
| do. | Toledo, | 500 | " | 11.50 | 5,750.00 |
| | Total, | 2,500 | | | $24,957.50 |

At the date of the interview between Messrs. Charlton and McKenzie, the tickets had not been printed, nor was any form of ticket exhibited to McKenzie, but it was agreed between them that the tickets, as soon as printed, should be sent to St. Louis for delivery to McKenzie, and that he was to pay for them on delivery. They were accordingly sent to Mr. Knight, appellant's ticket agent at St. Louis, and, December 17, 1880, were by him delivered to McKenzie, at his office in St. Louis, and McKenzie then paid for them the total sum agreed on.

The tickets were sold for the purpose of putting them on

the market, and the evidence shows that appellees, about January, 1881, established an office in Kansas City for the sale of the tickets, and also deposited them for sale in the offices of other brokers in that city. It appears from the evidence that rates for about two years between January 1, 1881, and June 6, 1882, were what the witnesses call demoralized, and were such that appellees could not dispose of the tickets purchased from appellees, the rates at times being much less than they paid for the tickets.

It appears by stipulation between the parties that in June, 1885, the Lake Erie and Western Railway Company, in certain proceedings for the foreclosure of mortgages, was placed in the hands of a receiver by the United States courts for the Southern District of Illinois and the Northern District of Ohio, and that, in pursuance of the orders of said courts, the receiver directed the conductors and agents of the road to refuse to accept for passage over the road any of the tickets in question, and that ever since said time the Lake Erie and Western Railway Company has so refused. Appellees at the date of the order to refuse the tickets, had remaining unsold about 1,319 tickets, having sold prior to that time about 1,181 tickets. After the refusal of the Lake Erie and Western Railway Company to honor the tickets, appellees, September 16, 1882, brought this suit. Appellant pleaded the general issue and the statute of limitations.

Appellees claim that appellant, by its contract, was bound to carry the holders of the tickets to the several destinations named thereon; that it contracted as principal, and is liable as principal. Appellant, on the contrary, contends that it acted as principal for its own line, and only as agent for the Lake Erie and Western Railway Company, and consequently, that it is not liable for the default of the latter company. Whether appellant is liable as contended by the plaintiffs is the main question in the case. The tickets were in form as follows:

The tickets to points on the Lake Erie and Western Railway, other than Fremont, had stamped on the margin of each coupon the point of destination. The tickets to Toledo were the same as the above, with the exception that on the margin of each ticket was stamped "Toledo, Ohio," and the first coupon under the heading of the ticket was as follows:

The different tickets were of different numbers.    On the back of the heading of every ticket was stamped:

> General Passenger and
>        J. CHARLTON.
>        Ticket Agent.

And on the back of each coupon on every ticket was stamped:

>        C. & A. R. R.
>        Dec. 15, 1880.
>        Chicago, G. 1.

The evidence shows that appellees dealt exclusively with appellant and that it received the whole amount of purchase money, and settled with the Lake Erie and Western Railway Company for its proportion, the latter company's share being in the proportion which the mileage on its line bore to the total mileage.

Mr. Smith, the general passenger and ticket agent of the Lake Erie and Western Railway Company, one of appellant's witnesses, says that prior to the sale of the tickets in question, and about September or October, 1880, it was agreed between him and Mr. James Charlton, the general passenger and ticket agent of appellant, that in issuing tickets each of the two companies, the Chicago & Alton and the

Lake Erie & Western, should use the road of the other as if it were its own, and make such rates as it pleased.

It will be noticed that on the head of each ticket, and also at the head of each coupon, are the words: "Issued by Chicago & Alton R. R." The heading contains the words: "To station stamped on the margin of attached coupon." On the margin of each coupon is stamped the name of a station. The headings of the tickets and all coupons are stamped on the backs as heretofore described. The negotiations resulting in the contract were between the plaintiff McKenzie, for himself and his partner, Mulford, and James Charlton, the general passenger and ticket agent of appellant. The defendant received the total amount of the purchase money.

The court found the issues for the plaintiffs and assessed their damages at $10,854.60, for which amount there was judgment; the defendant prosecutes this appeal

WM. BROWN and WM. E. HUGHES, attorneys for appellant.

JNO. S. COOPER and GURLEY & WOOD, attorneys for appellees.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In the case of the Illinois Central R. R. Co. v. Copeland, 24 Ill. 332, an action brought to recover for lost baggage, the court held that the purchase of a coupon ticket at Chicago for transportation from that city to St. Louis, via the Illinois Central R. R. and the Terre Haute and Alton road, and the giving to the passenger of a through baggage check, was a contract upon the part of the Illinois Central R. R. Co. to carry the passenger and his baggage to St. Louis, and that that company was liable for the loss of the baggage, although it might have been by the Illinois Central Railroad safely delivered to the Terre Haute and Alton road.

In the case of Pennsylvania Railroad Company v. Connell, 112 Ill. 295, which was an action brought against the Penn-

sylvania Railroad for its refusal to honor a coupon attached to a through ticket sold by the Wabash, St. Louis & Pacific Railroad Company for passage from Omaha to New York, over the line of the Wabash and the Pennsylvania Railroad, it was insisted by the Pennsylvania road that the Wabash Company, in the sale of the through ticket from Omaha to New York, contracted with Connell as a principal and not as an agent, notwithstanding the ticket upon its face read: "In selling this ticket for passage over other roads this company acts only as agent for, and assumes no responsibility beyond, its own line." And the coupon had upon it, "Issued by the Wabash, St. Louis & Pacific Railway on account of Pennsylvania Railroad."

The Supreme Court, in speaking of the question whether the Wabash railway in selling the coupon for passage over the Pennsylvania railroad acted as a principal or as an agent of the Pennsylvania road, said: "We think the rule is well stated by Redfield. He says: 'As the general duty of common carriers of passengers is different from the common carriers of goods, so the implied contract, resulting from the sale of through tickets for passengers, is different. In the case of the carriers of goods and the baggage of passengers, we have seen that taking the pay and giving tickets or checks through, binds the first company, ordinarily, for the entire route. But in regard to carrying passengers the rule is different, we apprehend. These through tickets, in the form of coupons, which are purchased of the first company, and which entitle the person holding them to pass over successive roads, with ordinary passenger baggage, sometimes for thousands of miles, in this country, import commonly, no contract with the first company to carry such person beyond the line of their own road. They are to be regarded as distinct tickets for each road, sold by the first company as agent for others, so far as the passenger is concerned.'" (2 Redfield on Law of Railways, Sec. 201.) The court then goes on to say: "The same rule is announced in Harlan v. Eastern Railroad Company, 114 Mass. 44, and in Pennsylvania Railroad Co. v. Schwarzenberger, 45 Pa. St.

208. The same principle was announced by this court in Chicago and Rock Island Railroad Co. v. Fahey, 52 Ill. 81. It is true a company selling a through ticket might, by contract, bind itself to be responsible for the entire route, but such liability can not arise, nor can it be established, from the fact alone, that a through ticket has been sold; something more is required to create a liability of such a character."

It is insisted that the case of Pennsylvania Railroad Co. v. Connell, 112 Ill. 295, announces a rule entirely at variance with the case above cited in the 24th Ill.

It must be borne in mind that the case in the 24th Ill. was an action against the initial carrier from whom the ticket was purchased to recover for baggage lost beyond its line, while the case in the 112th Ill. was an action brought against the road, a coupon for a ride over which had been sold by another carrier; and what is said by the court was in reply to the position taken by the Pennsylvania Railroad Company, that for its refusal to honor the coupon sold by the Wabash road, and the ejectment of the plaintiff from one of the passenger cars of the Pennsylvania road, an action could only be maintained against the Wabash road. And it must be noted that the court go no further than to approve the statement made by Redfield, namely, that through tickets in the form of coupons which entitle the person holding them to pass over successive roads, import, commonly, no contract with the first company to carry such person beyond the line of its own road. The court does not attempt to lay down the rule that a company might not, as was held in the 24th Ill. the Illinois Central Railroad Company did, make a contract and sell a ticket to transport a passenger not only over its own line, but over the line of another road.

We have been unable to find in any text writer an expression of opinion going beyond the statement made by Redfield.

Hutchinson on Carriers, Sec. 579, after announcing the general rule that a coupon ticket does not usually import a contract of through carriage, goes on to say: "There is,

however, nothing in the employment of such tickets inconsistent with the idea of a contract for through transportation by the first carrier which will make him the responsible party to the passenger for all injuries or losses throughout the entire journey. It may therefore be shown that there was such a contract, notwithstanding the acceptance of such tickets, and that the tickets were delivered in pursuance of the contract; and whether or not there was such a contract must, in every case of the kind, depend upon the facts."

Wood on Railroads, in Vol. 3, Sec. 359, says:

"There is no doubt that a carrier may contract to assume responsibility both for the passenger and his baggage over all connecting lines until his destination is reached; the question, therefore, is one of the construction of the contract of carriage. But the assumption of such unusual responsibility on the part of the carrier is not to be easily presumed; the proof of it must be clear and convincing. And we think it may safely be said that, according to the great weight of authority in this country, a railway company selling through tickets, involving a passage over its own line and connecting lines, is, as to personal injuries, responsible only for those occurring upon its own line; and as to baggage checked through, is exonerated from all further liability in respect to it, when it has delivered it into the custody of the proper connecting line. The company selling the ticket is treated merely as the agent of the connecting lines; and this is the case whether a single ticket, or a ticket with coupons for each road, is issued. Each company throughout the route is a principal, and liable as a common carrier on its own road, but no further. Indeed, it appears to us that nothing is more unreasonable than to attempt to hold the initial carrier liable for a personal injury to the passenger received on a connecting line."

Thus seeming to confine his statement of authority to an exemption of the initial carrier from liability for loss of baggage and personal injury on roads beyond the terminus of its own line.

In support of the contention of appellants that in all cases where coupon tickets are purchased the undertaking of the initial carrier selling the same is only to convey over its own line, and that in selling coupons for transportation over other lines it acts only as an agent of such companies, we have examined, as counsel assume that we would, all of the cases cited by appellants.

The case of Chicago and Rock Island Railroad Company v. Fahey, 52 Ill. 81, was an action against the Rock Island Railroad for lost baggage, and was brought by a passenger who purchased his ticket in New York City for transportation from New York to Peoria, Illinois.

The court held that the plaintiff had a right to recover against any line upon which his baggage was lost, and that in this action against the Rock Island Railroad Company, which it does not appear had sold the ticket, it was necessary, to justify a recovery, that it should appear that the baggage was lost upon the line of that road.

In the case of Furstenheim v. Memphis & Ohio Railroad Co., 9 Heisk. (Tenn.) 238, an action brought against the Memphis road for lost baggage, the passenger having purchased a through ticket from New York to Memphis at the office of the Pennsylvania Railroad Company in the city of New York, the court say: "All we have before us is the simple fact that the Pennsylvania Central Company sold plaintiff tickets which were recognized as good along the whole line, and which carried him to Memphis. Without other facts or circumstances proven, we are bound to hold that the Pennsylvania Central Company undertook for itself to transport plaintiff and his baggage to Memphis, and that as there is no privity shown as between plaintiff and the defendants, the latter can not be held responsible for a loss shown to have occurred before the baggage reached their road."

The case of Knight v. Portland Railroad Company, 56 Maine 235, was an action brought against the Portland Railroad Company because of personal injuries received by a passenger who had purchased at Lawrence, Mass., a ticket

for transportation over three lines of railroad, the last one of which was the defendant. The coupon had been recognized by the defendant as entitling the plaintiff to transportation over its road, and it was held liable for its negligence, by means of which plaintiff had been injured.

The case of Mosher v. The St. L. & Iron Mt. Ry. Co., 127 U. S. 390, was an action against the St. Louis & Iron Mountain Railway Company by a passenger, for being put off one of its trains. The defendant was held not liable, it appearing that he had failed to have his ticket properly stamped at Hot Springs in accordance with the conditions thereof, which conditions he had, over his own signature in writing, agreed to, the court holding that the defendant was not bound to have an agent of its own at Hot Springs, as the agent who was there to identify the passenger and stamp his ticket was the agent of the Hot Springs Railroad Company, and was so described in the ticket.

The case of Nashville & Chattanooga Railroad Company v. Sprayberry, 9 Heisk (Tenn.) 852, was an action for personal injuries. In reference to the liability incurred by a company selling coupon tickets over its own and other lines, the court say: "We are of opinion that in such cases the company selling the ticket shall be regarded as the agent of the other lines, when the tickets themselves import this and nothing else appears; and the purchaser may well understand with whom the contract is made and who is bound for its performance. Of course the company selling the tickets may, by contract, either expressed or to be fairly implied from its acts, bind itself to be responsible for the entire route; but this should not be held conclusively established from the sale of the tickets alone, or to throw upon the defendant the *onus* of proving that it expressly limited its liability."

The case of Hood v. N. Y. & N. Haven R. R. Co., 22 Conn. 1, was an action for personal injuries, the court holding that the defendant had no authority under its charter to undertake the carriage of passengers beyond its line, a doctrine which is directly opposed to the rule in this State,

if, indeed, it is as a general principle now recognized any-where.

In the case of Young v. Pennsylvania Company, 115 Pa. St. 112, the ticket sold by the Pennsylvania road contained this statement: "In selling this ticket for passage over other roads this company acts only as the agent for, and assumes no responsibility beyond its own line." It was held that the defendant would not be liable if the passenger was ejected from a road which it was not operating, and not by a servant operating one of its trains.

The case of Hartan v. Eastern R. Co., 114 Mass. 44, was an action for personal injuries. Nothing appeared upon the ticket to show that the defendant in selling the same under-took to carry the passenger beyond the terminus of its own line, and the court held that the import of such a transaction is that tickets for passage upon roads beyond its own line are sold by the first road as agents for the others.

The case of Craig v. Smith, 29 Vt. 421, was an action for personal injuries. The court say: "These through tickets in the form of coupons for each successive company which are purchased of the first company import no contract, or-dinarily, to carry the passenger beyond the line of the road of the first company, so far, at least, as they are concerned."

The case of Pennsylvania Railroad Company v. Schwar-zenberger, 45 Pa. St. 208, was an action for lost baggage. The ticket sold by the defendant contained this statement: "In selling this ticket for passage over roads west of Pittsburgh, the Pennsylvania Railroad Company acts only as agent for the western lines, and assumes no responsibility west of Pittsburgh." The court held that such clause ex-pressly limited the liability of the defendant in selling the ticket to matters which might occur upon the line of its own road.

The case of Poole v. Delaware Railroad Company, 35 Hun 29, was an action for personal injuries. The tickets sold were on separate cards. The passenger having been injured while riding in an omnibus line, with which the defendant connected, but over which it exercised no control, the court

say : " Each ticket is, as it purports to be, an independent contract or token, one by the railroad to carry from Oswego to Fulton Station, and the other by the omnibus line, to carry from Fulton Station to Fulton Village. In this case the uncontradicted evidence is, that the two lines were not connected in business, except that each, as agent, sold tickets over the other." Held, that recovery could not be had for personal injuries received beyond defendant's line.

The case of Milnor v. New York Railroad Company, 53 N. Y. 365, was an action for lost baggage and was brought on a coupon ticket. The court say : " The line was not a continuous railroad route; the cars of the defendant did not pass over the Housatonic railroad, and there was no fact proved tending to show that the defendant assumed to contract to Sheffield, except the sale of the separate tickets, the receipt of the fare and the use of the Housatonic check. The facts import an agency and not a contract as principal, and the obligations to the parties are the same as though the tickets had been purchased at the office of the respective companies."

The case of Kessler v. New York Railroad Co., 61 N. Y. 538, was an action for lost baggage. It appeared that the plaintiff bought a coupon ticket in the city of Washington for a passage to Buffalo over five lines of railroad, the last of which was the defendant. The court say that there was not proof that the baggage ever came into the custody of the defendant, and consequently it is not liable for its loss.

The case of Lundy v. Central Pacific Railroad Company, 66 Cal. 191, was an action to recover damages against the defendant for expelling plaintiff from its cars, while traveling as a passenger. It appeared that the plaintiff bought his ticket of the Union Pacific Railroad Company, traveled over its line to Ogden, took passage upon the cars of the defendant and was by it expelled. The court say : " The admission of defendant showed clearly that the contract for the carrying of plaintiff from Omaha to San Francisco, though made by the Union Pacific Railroad Company, was made by the authority of defendant. We have no doubt that the ac-

tion was properly brought against the defendant." Consequently, the judgment of the court below, non-suiting the plaintiff, was reversed.

These cases are very far from establishing the rule that under no form of a coupon ticket is it the rule that the road selling the same does not undertake to transport the passenger beyond the terminus of its own line. Much less that under no form of coupon ticket does the road selling the same undertake that the coupons will be received and recognized by the road over whose lines they purport to give the holder a right to transportation. Indeed, bearing in mind the well known rule that what is said of a general nature in the decision of a cause is in its application to be restricted to the particular facts of the case in which it is said, it would seem that the cases cited by appellant, as well as the American text books, are to the effect, only, that commonly, in the case of the sale of coupon tickets for continuous transportation in part over roads other than that of the company selling the same, the initial road by which the tickets are issued and sold will not be liable for loss of baggage or personal injuries happening to a passenger beyond its own line.

The question presented in this case is not, however, whether appellant, by the sale of these tickets, undertook to transport passengers over a line not its own, but whether it undertook that these tickets should be recognized and received by the Lake Erie and Western Railroad Company as good for transportation over its line.

There is an obvious distinction between an agreement by a railroad company to itself carry a passenger and an undertaking that another railroad, not controlled or operated by the contracting party, shall transport such party.

Our attention has not been called by appellant to any case in which it has been held that in the sale of coupon tickets the railroad company issuing and disposing of the same does not undertake that such coupons will be recognized and honored by the roads, respectively, over whose lines such coupons purport to give a right to transportation;

while in Hudson v. The Kansas Pacific Railroad Company, 3d McCrary's U. S. Circuit Court Reports, 249, a case of the sale of a ticket quite similar to those issued and sold by appellant, it was held that where a railroad company issues a ticket entitling the holder to a passage over its own and connecting lines to the place of destination mentioned in the ticket, upon the refusal of the connecting line to accept the ticket, and of the contracting company to furnish a local ticket over that line or the means necessary to procure one, the holder has a right of action against the original contracting company for breach of contract.

It has sometimes been said that a railroad ticket is not a contract, but merely evidence of a contract. Doubtless as to some tickets this is the case. As, if a ticket had on it only the words " Springfield to Chicago," such ticket would probably be merely evidence of a contract to carry a person from one city to the other. But it is clear that a railroad company may issue a ticket which is in all respects a written contract, and this although, as in the case of most contracts, much of the obligation entered into is implied by law, and although, as is not infrequently the case, the written instrument contains abbreviations, makes use of technical expressions, or words having a peculiar significance in the community in which they were used, so a railroad ticket may be a written contract, although it be necessary to show the meaning of abbreviations, technical expressions, or words having a peculiar or local significance in the community in which the ticket was sold or designed to be used.

We are of the opinion that the tickets sold by appellant were written contracts, by which appellant, at the least, undertook that the coupons thereto attached should be recognized by the Lake Erie and Western Railroad Company and the Ohio Central Railroad Company respectively, as good for transportation over their lines between the stations thereon marked. Each coupon, as well as the heading to which they are severally attached, purports to be issued by the Chicago & Alton railroad; while the heading before each coupon declares that the ticket is " Good for one first

class passage to station stamped in margin of attached coupon." This statement, declaring what the ticket is, is signed by the general passenger and ticket agent of the Chicago & Alton road, and on the back of each coupon was stamped the initials of appellant's road, with the date and place of issue.

We fail to see how it can be successfully contended that appellant, by the issue and sale of such a ticket, with a coupon thereto attached upon which is, " Issued by Chicago & Alton Railroad, Lake Erie & Western Railroad, Bloomington, to station stamped in margin of this coupon," there being stamped in the margin, "Fremont, Ohio," is not a ticket on the part of appellant to transport the holder thereof over the Lake Erie & Western Railroad from Bloomington to Fremont, Ohio, although we do not consider that, in order to sustain the judgment rendered in this case, it is necessary to hold more than that appellant, by the issue and sale of such ticket, undertook that the coupons thereof should be received and honored by the respective roads over whose lines they purported to give transportation.

So far as we have examined, all of the cases in which the question has been presented, if holding that by the sale of a coupon ticket the road issuing and selling the same does not undertake to transport beyond the terminus of its line, hold that while such is the inference to be derived from the ticket itself, in which nothing is said to the contrary, it is competent for the owner of the ticket to show, by extraneous facts and circumstances, that the undertaking of the road was to transport to the end of the contemplated journey, and that therefore the initial road selling the ticket may be held liable for personal injuries or loss of baggage upon any part of the route.

The contract expressed in the written tickets can not be modified by parol. The agreement between appellant and appellees is evidenced partly by writing and partly by parol testimony. It was therefore the duty of the judge of the Circuit Court, trying the case, as he did, without a jury, to

determine and find what the agreement between the parties was. This he did, and in support of the judgment by the court rendered, it is to be presumed that, as to all issues of fact, the finding by the trial judge was such as tends to sustain the judgment rendered. The court might properly, as it did, hear evidence as to the circumstances and surroundings under which the agreement between appellant and appellees was made, that, standing in the shoes of the parties, it might interpret and understand the language by them used as they understood it. In reality the appellant contracted and did sell to appellees 2,500 written contracts for transportation, and it must be presumed that the Circuit Court found that the agreement of appellant with appellees was such that it undertook and promised appellees that the coupons by it delivered to appellees for transportation over roads other than its own should be duly honored by such roads.

We find in the record here presented no sufficient reason for thinking that the Circuit Court erred in such conclusion.

Appellant insists that appellees were not entitled to recover any damage because, it is urged, upon the 1,200 tickets they sold, which were honored by the Erie road, they received more than the entire 2,500 tickets cost them; that is to say, having made a profit upon a portion of the contract with appellant, they are not entitled to any damage for the failure of appellant to carry out another portion of the contract. Appellant also insists that no damages can be recovered because appellant was prevented from carrying out its contract by a power over which it had no control. The act of the United States Circuit Court in directing its receiver to refuse to honor these tickets being, in its effect, equivalent to the acts of God or an act of the public enemy.

Appellant urges that the taking possession of the Erie road by the United States Circuit Court through its receiver, is equivalent to a taking possession of the same by the sovereign, namely, the Government of the United States.

And appellant also insists that if appellees have a claim for damages against any one it is against the Erie railroad, the receiver of which repudiated these coupons. These are

all the objections made by appellant on the score of damages, and it is sufficient to say that we do not think any or either of them are well taken.

Appellant also sets up a statute of this State by which only duly appointed agents of railway companies are entitled to sell passenger tickets. We do not think this statute is applicable to the facts of this case. It appears that these tickets were designed to be sold outside of this State, and if not, under the facts of this case it would appear that appellees were duly appointed by appellant, the agent, to sell the tickets in question.

The judgment of the Circuit Court is affirmed.